UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case No.: 1:17-cv-2513 |
| *Plaintiff*, | ) | <u>Hon.</u> |
| | ) | Judge Presiding |
| v. | ) | |
| | ) | <u>Hon.</u> |
| INDIANA SUPREME COURT, | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | Jury Trial Demanded |

## COMPLAINT AGAINST RETALIATION ACTIONS
## OF THE INDIANA SUPREME COURT AGAINST ANDREW STRAW

On this 27th anniversary of the passage of the Americans with Disabilities Act, I, *plaintiff* Andrew U. D. Straw, *pro se*, an adjudicated "qualified person with a disability" under the ADA, having been retaliated against for exercising my absolute right to file ADA cases or make ADA complaints, hereby seek justice against the Indiana Supreme Court for multiple retaliations against my ADA work:

## BACKGROUND FACTS

1.  I am disabled and the Northern District of Illinois U.S. District Court has adjudicated this fact.[1]

2.  My law license was suspended in Indiana on February 14, 2017.

3.  The Indiana Supreme Court based its suspension on four "counts," each of which was a disability-related federal lawsuit I filed either on my own behalf or to protect another person's ADA rights.

---

[1] *Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir.)

1

4. I have about 10 different state and federal administrative complaints with various agencies due to the discrimination of the Indiana Supreme Court, evidenced in the 180-day suspension.

5. Because I worked at the Indiana Supreme Court and alleged 16 years of discrimination, including violations of my privacy, firing me for taking an FMLA leave, stripping me of handicap parking when I needed it after a car accident on the way to work, I have a "continuing action" EEOC complaint for employment discrimination based on disability.[2]

6. EEOC indicates that the charge was filed on June 1, 2017 and has been assigned to an investigator in Indianapolis.

7. The issue of Indiana Supreme Court disability discrimination against me has arisen in several lawsuits.[3]

8. Unfortunately, in every case, the discrimination was never actually addressed on the merits, instead avoided or blocked based on some other preliminary grounds such as *Rooker-Feldman* or *Younger-Middlesex* or

---

[2] *Straw v. Indiana Supreme Court*, 470-2017-01490 (EEOC)

[3] *Straw v. Sconiers et. al.*, 3:14-cv-01772-JD-CAN (N.D. Ind.); *Straw v. Indiana Supreme Court et. al.*, 1:15-cv-01015-RLY-DKL (S.D. Ind.); *Straw v. Dixon, et. al.*, 3:16-cv-00276-RL-JEM (N.D. Ind.); *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir.); *Straw v. Indiana Supreme Court*, 16-1346 (U.S. Supreme Court); *Straw v. Magnus-Stinson*, 16-1306 (U.S. Supreme Court, on petition for writ of cert.)

*res judicata*. My case for damages and injunctive relief for the suspension as disability discrimination is before the Seventh Circuit U.S. Court of Appeals and I have won on every issue but one: *res judicata*. I have asked for reconsideration and en banc rehearing because the prior lawsuit was dismissed due to the <u>lack of service</u> and that made the rest of the ORDER *dicta*.[4]

9.    Please incorporate by reference my Affidavit attached to this pleading. Exhibit 4. It explains the supporting exhibits, which include a letter from the ABA showing that my membership was terminated (Exhibit 1) and an ORDER from the Virginia State Bar utterly rejecting the Indiana Supreme Court discipline and stating that I met my "clear and convincing" evidence burden to show I did not deserve discipline. Exhibit 2.

10.    As a matter of fact, there is an even split between the Indiana Supreme Court and the Virginia State Bar, with both courts stating "clear and convincing" evidence supported their ORDERs. Exhibit 2.

---

[4] Cf. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir. 1983) and *Ruiz v. Snohomish*, 824 F.3d 1161 (9th Cir., 2016)

11. This case is about retaliation and the merits of the discipline are not the purpose of this complaint.

12. My ABA membership was terminated and this fact may not be disputed because the Indiana Supreme Court demanded it to happen.

13. The ABA imposed termination under its rules, but the rules state that a lawyer will only be terminated if that lawyer's license is suspended for six months. I was suspended for 180 days, which is less than 6 months by a couple of days. Such a harsh penalty must be justified 100% by the facts as applied to the rule, and I simply was not suspended for long enough.

14. I explained this to the ABA and the ABA continued to insist that I should be terminated when the Indiana Supreme Court requested it.

15. I have sued the ABA in the past under the ADA, Titles II and III.[5]

16. Part of the reason for suspending me was an Indiana Supreme Court count based on the same ABA lawsuit.

---

[5] *Straw v. American Bar Association Section of Legal Education and Admission to the Bar et. al.*, 1:14-cv-05194-TMD (N.D. Ill.)

17. For the Indiana Supreme Court to collude with my former defendant to punish me when the punishment was based in part on my lawsuit against that defendant represents retaliation.

18. Further, the Indiana Supreme Court lists my suspension on its Roll of Attorneys entry for me, and this is not necessary, especially when I am opposing the suspension in federal court and so many other forums. This is retaliation for my having filed multiple ADA lawsuits. The damage is to my reputation and grows every day that notation is there.

19. Like with the ABA, the Indiana Supreme Court sought my federal bar licenses to be suspended based on the Indiana suspension. The Indiana Supreme Court was successful in getting my licenses suspended in three U.S. district courts: Northern District of Illinois, Northern District of Indiana, and Southern District of Indiana.[6]

20. The "count" cases happened in the Northern District of Indiana and the Northern District of Illinois, so these suspensions, which happened with no hearing, are also collusions and retaliation by the Indiana Supreme Court. Obtaining these suspensions has prevented me from

---

[6] *In Re Disciplinary Action Andrew U D Straw*, 1:17-mc-00005-TLS (N.D. Ind.); *In Re Andrew U. D. Straw*, 1:17-mc-00013-TWP-DKL (S.D. Ind.); *In the Matter of Andrew Straw, An Attorney*, 17-D-02 (N.D. Ill.)

protecting my family members' rights for their poisoning and disability from the U.S. Marine Corps. I now am unable to help 1,000,000 Marines and their family members, including my daughter and my brother and my stepfather. I am currently only able to pursue this matter for myself and my mother's estate, for which I am the administrator.[7]

21. Indiana Attorney General attorney Patricia McMath has absolutely refused to communicate with me since March 6, 2017, nearly five months ago, when she is the counsel for the Indiana Supreme Court in my Seventh Circuit appeal. Deputy Attorney General Betsy Isenberg, attorney for the Indiana Supreme Court defendants in my district court case, has not responded to me since December 2016, nearly eight months ago. Deputy Attorney General Steven Creason, in charge of the defense in my case for review at the U.S. Supreme Court, never responded to me when I wrote to him.

22. These are shunning behaviors and they represent a failure to negotiate when I have had evidence to demonstrate discrimination in

---

[7] *Straw v. United States*, 17-2114 (Fed. Cir.); *Straw v. United States*, 16-17573-GG (11th Cir.)

document format. Shunning is retaliation. It is also evidence of bad faith by a public servant, as all of them are.

23. I have tried to extricate myself from the influence and oppression of being under the ethical jurisdiction of such a hostile ex-employer, and I asked the Indiana Supreme Court if it would revoke its discipline to give me the opportunity to resign my license, but it would not. Exhibit 3. This was my attempt to mitigate damages and cut the bonds to the defendant, which has abused me since 2001 and my car accident on the way there to work.

## STANDING AND OTHER LEGAL ARGUMENTS

24. The U.S. Supreme Court has laid out the requirements for standing in a civil rights act case. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972). This Civil Rights Act of 1968 case shows that Article III standing can be created through Congress passing a civil rights act that gives a particular group the right to sue, and violation of the terms of the Act is all the injury an "aggrieved party" needs to show.

25. The *Fiedler* case from Maine showed that *Trafficante*'s 9-0 reasoning applies in the case of the ADA. *Fiedler v. Ocean Properties Ltd.*, 683 F. Supp. 57 (D. Maine 2010).

26. The Trafficante rule was mentioned positively 20 years later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

27. It cannot be disputed that I have standing when the defendant suspended me based on four of my disability rights federal cases.

28. It cannot be disputed that the entire disciplinary proceeding was initiated by the ADA Coordinator of the Indiana Supreme Court reacting and retaliating against my ADA complaints days earlier about that state court, her employer. Exhibit 4.

29. I have the right to compensatory damages under the ADA, Title II, per *Barnes v. Gorman*, 536 U.S. 181 (2002) and the retaliation must also be compensated under Title II, as per Title V.

30. Retaliation against an ADA complaint is illegal. 42 U.S.C. § 12203 prohibits retaliation, interference, coercion, and intimidations.

31. 42 U.S.C. § 12203(c) explains that the remedies available for retaliation, interference, coercion, and intimidation are those found in Title II in a case such as this.

32. Filing an ADA lawsuit or making a complaint is a right under the Act, no matter how the complaint or lawsuit is resolved ultimately. Simply filing is a right. The right against retaliation for having done so

is extremely broad and explained in 28 C.F.R. § 35.134 and the DOJ technical assistance manual found here: http://www.ada.gov/reg2.htm

33. The State of Indiana has no immunity under the ADA, Title II: 42 U.S.C. § 12202. The lack of immunity was discussed in *Tennessee v. Lane*, 541 U.S. 509 (2004), because Congress has abrogated 11th Amendment immunity of states, including state courts.

**COUNT I: RETALIATION BASED ON ABA CASE & TERMINATION**

34. I had a right to file the ABA case to obtain disability statistics in law school admissions and I filed the case under the ADA, Title II and III because the ABA regulates all accredited law schools, public and private. My success here will help increase the disability bar in all 50 states and will help all disabled people have access to justice. The violation in retaliating is to every disabled American and should be compensated accordingly as I step forward for their ADA rights. Regardless of the outcome in that case, which incidentally did not involve any sanction or fine by the federal judge, I had the right to file the case and the right not to experience any retaliation of any kind.

35. The Indiana Supreme Court convinced the ABA to terminate my license and this prevented me from participating in law reform on this

and other topics at the ABA. In October 2016, my proposal regarding the statistics was taken up and considered by the ABA, and this shows the legitimacy of my request.

36. This Indiana Supreme Court retaliation also includes every ADA case or lawsuit even remotely implicated in any of the four counts, including the about 150 handicap spaces missing in Streamwood as part of the underlying facts in the *Kloecker* case.

37. Damages must include emotional distress, humiliation, damage to my ability to influence disability law reform, and any other damages I may prove at trial. Retaliation is prohibited for the reasons given above and those anti-retaliation legal grounds justify relief.

## COUNT II: INDIANA SUPREME COURT ROLL OF ATTORNEYS

38. The Indiana Supreme Court has placed a notation that I have been suspended on its Roll of Attorneys system and members of the public can see this, making it look like I did something to justify 180 days of suspension, when I did not.

39. This notation humiliates me, causes me distress, represents a continual attack on me as a disabled lawyer who does civil rights work,

and of course will impact whether people want me to represent them in the future, because this notation is permanent.

40. The notation is retaliation for my having filed the cases being punished as "counts." I had every right to file those cases regardless of the outcome. No discipline should have taken place because the Virginia State Bar rejected it and reactivated my license in 2016, creating full faith and credit issues for the Indiana discipline, which had not yet been imposed. All four of the federal judges failed to sanction me even one cent, one day of suspension, or even a private reprimand letter. The suspension is and always will be a set of "collateral attacks" on the judgment of these four federal judges by the Indiana Supreme Court to injure me and destroy my reputation and law career.

## COUNT III: INDIANA ATTORNEY GENERAL ATTORNEYS SHUNNING ME IS RETALIATION

41. As I mentioned above, the attorneys for the defendant, public officers bound to obey the First Amendment and my right to petition the government, have refused to communicate with me for months, refused every overture I have made for settlement of the matter, and so have acted in bad faith.

42. The federal judge in my case against the defendant[8] granted my *In Forma Pauperis* motion and there are consequences to this. 28 U.S.C. § 1915 explains that IFP status can only be granted when the judge determines that the case is not frivolous, not malicious, the defendant is not immune, and the case states a claim upon which relief can be granted.

43. These issues, determined preliminarily, should have motivated the attorneys for defendant to ask me about settlement, in some way, shape, or form, because the case was good. I have given so many reasons to settle with me, backed up by documents proving my case, non-communication is not acceptable and it is retaliation.

## COUNT IV: REFUSAL TO LET ME GO

44. My final count concerns the refusal of the defendant to release its grip on me. Exhibit 3. As long as the people who abused me remain in the high offices on the Indiana Supreme Court, I cannot and never will trust that court or any of the lower courts subject to its control to treat me fairly or treat my clients fairly. I have abundant reason not to want an Indiana law license anymore. I will never apologize for my disability rights work and I will not pay the unjust costs imposed on me when not

---

[8] *Straw v. Indiana Supreme Court, et. al.*, 1:16-cv-03483-JMS-TAB (S.D. Ind.)

a single one of the federal judges in the underlying "count" cases imposed even one cent in fines or costs. I will not retake the MCLE to demonstrate my ethical knowledge when it is the justices of the Indiana Supreme Court who are not enforcing Rule 8.4(g), which should have protected me from disability discrimination. I have asked the ABA to investigate and issue an opinion on the Indiana Supreme Court refusal to enforce this rule, which is an ABA Model Rule. The defendant must be ordered to do the right thing because they appear to have no concept of retaliation or right action toward someone who sacrificed so much for the Indiana justice system and every court in the state. Damages are in order.

## PRAYER FOR RELIEF

45. The Indiana Supreme Court is a repeat offender of the ADA, Title II, and has lost multiple ADA lawsuits,[9] paying hundreds of thousands of dollars in settlements to people with much lighter violations than I have suffered from this former employer. I broke both my legs and my pelvis and nose serving this Supreme Court and my reward was to be betrayed by its ADA Coordinator in multiple ways. There is no excuse for what

---

[9] For instance: *Prakel v. Indiana*, 100 F.Supp.3d 661 (2015); *Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215 (S.D. Ind. 2010)

the Indiana Supreme Court did to me, and the State of Indiana needs to pay me promptly and stop engaging in these retaliatory and dilatory behaviors.

46. I seek an injunction under 42 U.S.C. §§ 12132, 12133, 12203, and 28 C.F.R. § 35.134 to force the Indiana Supreme Court to ask the ABA to restore my membership and apologize for this retaliation. Further, I ask an injunction to take the notation about suspension and any reference to it on the Indiana Roll of Attorneys website away, permanently and completely. I ask that the Court direct the attorneys for the defendant to at least acknowledge when I communicate with them.

47. As a preliminary injunction matter, I ask the Court to protect me so that the damage does not increase with yet more abuse, in whatever form.

48. As mentioned in the original case to stop the discipline:[10]

> "To obtain a preliminary injunction, the moving party must show that its case has 'some likelihood of success on the merits' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)). "If the moving party meets these threshold

---

[10] *Straw v. Indiana Supreme Court, et. al.*, 1:16-cv-03483-JMS-TAB (S.D. Ind.), Dkt. 28, pages 2-3.

> requirements, the district court 'must consider the **irreparable harm** that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "The district court must also consider the **public interest** in granting or denying an injunction." *Stuller*, 695 F.3d at 678.
>
> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

49. If my evidence shows that I have some chance of success on the merits from the retaliatory actions of the defendant (ABA membership terminated; Roll of Attorneys defamatory notation; shunning; refusal to allow resignation), no adequate remedy at law and irreparable harm is likely, my situation satisfies the *Stuller* test. I believe this to be so.

50. Balancing **irreparable harm** of each side is easy. My having an ABA membership has nothing to do with the defendant and allows me to address deficiencies in disability law at the national level. Removing the Roll of Attorneys notation would not hurt the defendant or the public, especially if I am allowed to resign. Communicating with me is a very light burden that has the possibility of settlement and no negative side-

effects to the opposing counsel besides being asked to act humanely toward someone who has been hurt by their client.  Allowing me to resign my Indiana license in a dignified way will help me to repair the damage at the federal level with all my other licenses.  Not being an Indiana lawyer has many advantages for me in avoiding yet further retaliation and abuse that the Virginia State Bar has called "a drive-by-shooting."  There is no benefit to the Indiana Supreme Court from keeping its discriminating thumb on me and humiliating me further, because doing so will invite more lawsuits for retaliation.

51.     There is a strong public interest in restoring me and preventing any further harms.  I have demonstrated that my aims are to increase "access and opportunity" for every disabled person in the United States and that is the motto of my political party.[11]  That is why I sued the ABA and top law schools to start collecting the statistics.  Lawyers with disabilities are as important for the civil rights well-being of disabled Americans as Thurgood Marshall was for the black civil rights movement.  If one of the persons who comes through the system now is a Thurgood Marshall for

---

[11] *Straw v. Indiana*, 1:17-cv-1797-WTL-DML (S.D. Ind.).  *IFP* was granted in this case in July 2017.

disability rights, I will feel absolutely elated that I was able to help open that door.

52. Being forced to stop abusing me will not even impose a light burden on the defendant. Injunction relief is needed and appropriate.

53. I ask for compensation under *Barnes v. Gorman*, 536 U.S. 181 (2002), to pay for the injuries to me from the retaliation and to make me whole. I have demanded $5 million in my lawsuit currently before the Seventh Circuit for the suspension.

54. **The damages from retaliation are worse.** They demonstrate that the defendant has no remorse and will keep violation the law and injuring me indefinitely, damaging me as a civil rights leader, regardless of my rights as disabled person and lawyer.

55. My interrupted work would benefit every disabled American and the U.S. Census Bureau has said that 19% of Americans have a significant disability. The Census Bureau says there are 325 million Americans as of this date.[12]  19% of 325 million is 61.75 million Americans with disabilities. On this 27th anniversary of the ADA, with

---

[12] https://www.census.gov/popclock/

my work affecting 61.75 million Americans with disabilities, the damages amount should be $2.70 x 61.75 million.

56. I therefore ask **$166,725,000** or an amount a jury will find appropriate to compensate the damages to me from the retaliation revealed in the above counts. Discovery may reveal more reason to compensate, but <u>**I have never been allowed discovery**</u> against this defendant in an ADA lawsuit.

57. The defendant, **a repeat ADA offender**, is aligning itself with every violator I have ever opposed, and attempting to deter me from using the justice system itself, claiming I am incompetent based on disabilities I developed from my father's honorable U.S. Marine Corps service training for his Vietnam duty in 1970-1971. I ask a jury to send a clear message that this will NEVER be tolerated and that my federal rights are secure in the State of Indiana, whether I can trust the state courts there or not.

58. I ask any other relief that this Court and a jury may deem fitting under the circumstances.

## JURISDICTION AND VENUE

59. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Americans with Disabilities

Act, Titles II & V and the First Amendment of the U.S. Constitution, as incorporated by the Fourteenth Amendment.

60. Venue properly lies in the Southern District of Indiana under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to this action occurred within this district.

I, *plaintiff* Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury. Dated: July 26, 2017

Respectfully submitted,

s/ ANDREW U. D. STRAW

1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333   Fax: (877) 310-9097
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, *plaintiff* Andrew U. D. Straw, certify that I filed the above COMPLAINT and supporting EXHIBITS and CIVIL COVERSHEET with the Clerk of this Court via the Court's CM/ECF system on July 26, 2017, and this will be served on all attorneys of record as well as permanently available through Pacer.gov. I will file an IFP motion and PROPOSED SUMMONS separately.

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff*, Proceeding *Pro Se*

July 26, 2017